**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **CIJAE HOLLINS, # M45877,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 14-cv-01306-NJR** |
| | ) | |
| **SALVADORE GODINEZ,** | ) | |
| **GLADYS E. TAYLOR, TY BATES,** | ) | |
| **and UNKNOWN PARTIES,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM AND ORDER</u>

**ROSENSTENGEL, District Judge:**

Plaintiff Cijae Hollins, an inmate who is currently incarcerated at Lawrence Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 against three high-ranking officials[1] at the Illinois Department of Corrections ("IDOC") and ten unknown officials[2] at the Du Quoin Impact Incarceration Program[3] and Dixon Springs Impact Incarceration Program.[4]  According to the complaint, Plaintiff was injured by an officer at Du Quoin in August 2014.  After reporting the incident, he was transferred out of Du Quoin and eventually into the Dixon Springs Impact

---

[1] These IDOC officials include Defendants Salvadore Godinez (director), Gladys Taylor (assistant director), and Ty Bates (southern director).

[2] These ten unknown defendants include various officials at Du Quoin and Dixon Springs.  The case caption in the complaint identifies the Du Quoin officials generically, as follows: (1) John Doe No. 1 (head director); (2) John Doe No. 2 (assistant director); (3) John Doe No. 3 (assistant director); (4) John Doe No. 4 (correctional officer); and (5) John Doe No. 5 (correctional officer).  The case caption identifies the Dixon Springs officials as follows: (6) John Doe No. 6 (head director); (7) John Doe No. 7 (assistant director); (8) John Doe No. 8 (assistant director); (9) John Doe No. 9 (investigating officer); and (10) John Doe No. 10 (correctional officer).  The Court found these designations to be more confusing than helpful.  The substantive allegations did not refer to many of the unknown defendants using these designations.

[3] Du Quoin Impact Incarceration Program is a satellite facility of Pinckneyville Correctional Center and is also located in the Southern District.  *See* https://www2.illinois.gov/idoc/facilities/Pages/DuQuoinIIP.aspx.

[4] Dixon Springs Impact Incarceration Program is a satellite facility of Vienna Correctional Center and is located in the Southern District.  *See* https://www2.illinois.gov/idoc/facilities/Pages/dixonsprings.aspx.

Incarceration Program.  There, Plaintiff claims that staff continued to treat him poorly and issued him a false disciplinary ticket.  Plaintiff now asserts claims against Defendants for violating his rights under the United States Constitution and other federal laws.  Plaintiff seeks monetary damages, declaratory judgment, and injunctive relief.  This includes a preliminary and permanent injunction expunging Plaintiff's false disciplinary ticket and transferring him to another facility.

<u>**Merits Review Under 28 U.S.C. § 1915A**</u>

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A.  Under Section 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims.  28 U.S.C. § 1915A(a).  The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief.  28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557.  Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim.  *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).  Additionally, Courts

"should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements."  *Id*.  At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed.  *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).  Only one of Plaintiff's claims survives preliminary review under this standard.

## The Complaint

While participating in the Du Quoin Impact Incarceration Program ("Du Quoin"), Plaintiff alleges that he was assaulted.  On August 29, 2014, an Impact Incarceration Program ("IIP") officer[5] entered Plaintiff's dorm and "announce[d] a sound off" (Doc. 1, p. 5).  Plaintiff responded loudly.  When the IIP officer told Plaintiff to quiet down, Plaintiff explained that he misunderstood the order; he thought he was supposed to use a loud voice.  The officer called Plaintiff a "dipsh*t" (Doc. 1, p. 5).  The other inmates laughed.

Another Du Quoin officer, who is identified in the complaint as Defendant John Doe No. 4, then ordered a group of inmates to stand with their noses and toes against the wall.  When they did so, Defendant Doe No. 4 "walked down the line and with a closed fist punched all of [the inmates] in the back of [their] heads" (Doc. 1, p. 5).  Plaintiff sustained a "busted" mouth, which began to bleed.  He suffered from a headache and mouth pain.  He spit some of this blood onto the floor.

When Defendant John Doe No. 5 asked Plaintiff if he spit onto the floor, Plaintiff denied doing so.   He also explained, however, that his mouth was "busted" and bleeding.

---

[5] The complaint does not identify this officer as a defendant or refer to the individual as "John Doe."  It is therefore not possible for the Court to discern whether Plaintiff intended to sue this individual.  A discussion of possible claims against the officer is set forth below in the subsection entitled "Du Quoin IIP Officer – August 29th."

Twice, Defendant Doe No. 5 made Plaintiff go to the restroom and wash his face.  Plaintiff was then forced to "carry a log" as punishment for 20-30 minutes (Doc. 1, p. 6).

On August 30, 2014, Plaintiff asked an unknown first shift officer[6] how to report the incident.  The officer instructed Plaintiff to fill out a request for the counselor.  Plaintiff did so.  Soon thereafter, the same officer told Plaintiff to report to the counselor's office, where an unknown lieutenant[7] met Plaintiff and took his statement.  Shortly thereafter, Plaintiff and six other inmates were transferred out of Du Quoin to Pinckneyville Correctional Center ("Pinckneyville").

At Pinckneyville, Plaintiff was examined by a nurse,[8] who took photographs of his injuries (Doc. 1, p. 7).  Plaintiff then provided a statement to an internal affairs officer,[9] who asked whether Plaintiff would submit to a lie detector test, but one was never conducted.  Instead, the internal affairs officer told Plaintiff, and the other six inmates, that they would not have to return to Du Quoin.  All seven inmates were then escorted to segregation, where they remained until their transfer to Dixon Springs Impact Incarceration Program ("Dixon Springs") on September 2, 2014.

---

[6] The complaint does not identify this first shift officer as a defendant or refer to him as "John Doe."  A discussion of possible claims against this individual is set forth below in the subsection entitled "Du Quoin First Shift Officer and Lieutenant – August 30th."
[7] The complaint also does not identify this individual as a defendant, even in generic terms.  A discussion of possible claims against the unknown lieutenant is included in the section entitled "Du Quoin First Shift Officer and Lieutenant – August 30th."
[8] The complaint does not identify this nurse as a defendant or refer to the individual in generic terms.  A discussion of possible claims against the nurse is set forth below in a subsection entitled "Pinckneyville Nurse."
[9] The internal affairs officer is not identified as one of the "John Doe" defendants, and it is also not clear whether Plaintiff intended to sue this individual.  A short discussion of possible claims against this individual is included below in a subsection entitled "Pinckneyville Internal Affairs Officer."

Plaintiff complains of harassment by unknown officers[10] and inmates at Dixon Springs. The unknown officers repeatedly told Plaintiff they would make sure that he went to jail. Despite complying with "all [of] the rules," Plaintiff alleges that he was "constantly . . . written demerit cards" (Doc. 1, p. 7). Officers called Plaintiff a "snitch." He asked Lieutenant Turner[11] for a job, but his request was denied after Lieutenant Turner explained that Plaintiff would not be at the facility long enough to have a job; Lieutenant Turner then said, "[y]ou['re] going to jail[.] I'm going to make sure of it . . . Now get the h*ll out of my face before I slap the f*ck out of you" (Doc. 1, p. 7).

On an unknown date, a lieutenant called Plaintiff out of the dorm and asked him to retell his version of the August 2014 incident. An investigator, Defendant John Doe No. 9, joined the interview. When Plaintiff recounted the events, Defendant Doe No. 9 called Plaintiff a liar and accused him of influencing the other six inmates. Defendant Doe No. 9 tried to coerce Plaintiff into changing his story. When Plaintiff refused, Defendant Doe No. 9 wrote a report that Plaintiff did not consider accurate. Therefore, Plaintiff refused to sign it. Defendant Doe No. 9 and another officer signed the report, saying that Plaintiff "refused" to sign it (Doc. 1, p. 8).

Around September 19, 2014, Plaintiff asked another inmate to quiet down during physical training, so that the group would not be punished (Doc. 1, p. 9). The other inmate pushed Plaintiff. An unknown lieutenant pulled the inmate out of line. Defendant John Doe No. 10 then ordered Plaintiff to stand with his nose and toes against the wall and tell his version of the events that had transpired.

---

[10] A discussion of possible claims against these individuals is included below in the subsection entitled "Dixon Springs officers."
[11] A discussion of possible claims against Lieutenant Turner is included below in a subsection entitled "Lieutenant Turner."

When Plaintiff did so, Defendant Doe No. 10 yelled at him, saying "I don't believe you. [T]hat might have worked at Du Quoin but not here" (Doc. 1, p. 9).  Plaintiff was then required to "carry a log," and Defendant Doe No. 10 later issued Plaintiff a disciplinary ticket. Plaintiff alleges that the inmate who shoved Plaintiff was "allowed to write a case note on [Plaintiff]," which stated that Plaintiff refused to carry a log.  Plaintiff alleges that he did not refuse to carry a log, but simply questioned the lieutenant's decision not to make *both* inmates do so together.

Defendant Doe No. 10 responded to this challenge by yelling in Plaintiff's face and "snatching" his hat so hard that he fell onto solid rocks while carrying a heavy log. Defendant Doe No. 10 then walked Plaintiff to the administration building and told him that he was going to jail for making false accusations against staff.  After pleading his innocence, Plaintiff "was then giv[en] a yellow jumpsuit and shackled."  Plaintiff now claims that IDOC officials have a custom or practice of blaming inmates for their own wrongdoings.

Plaintiff generally raises a claim against Defendants for a violation of his "rights under the constitution and laws of the United States" (Doc. 1, p. 11).  The complaint does not mention any particular constitutional right or law.  Plaintiff seeks declaratory judgment and monetary damages.  He specifically requests a preliminary and permanent injunction, requiring Defendants Godinez, Taylor, and Bates to expunge his disciplinary ticket from his record and transfer him to a minimum security institution.

## Discussion

The allegations in the complaint set forth a chronology of events followed by a general assertion that Defendants violated Plaintiff's "rights under the constitution and laws of the United States" (Doc. 1, p. 11).  No specific claims are asserted against anyone.  Defendants are

not identified, or referred to in the complaint, with any specificity or consistency.  Under these circumstances, the Court deems it most appropriate to organize its discussion of the allegations by reference to each individual addressed in the complaint.  When reviewing the allegations against each individual under Section 1915A, the Court finds only one claim, i.e., for excessive force, that survives preliminary review.  The Court will discuss that claim first.

**A.      John Doe No. 4**

Plaintiff shall be allowed to proceed with an Eighth Amendment excessive force claim (**Count 1**) against Defendant John Doe No. 4 at this time.  This defendant is an officer at Du Quoin, who allegedly ordered Plaintiff and several other inmates to line up with their noses and toes against the wall before he punched each one of them with a closed fist in the back of the head.  Plaintiff sustained a mouth injury and a headache that caused severe pain.

The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under Section 1983.  *See Wilkins v. Gaddy*, 559 U.S. 34 (2010); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000).  To state an excessive force claim, an inmate must show that an assault occurred and that "it was carried out 'maliciously and sadistically' rather than as part of 'a good-faith effort to maintain or restore discipline.'" *Wilkins*, 559 U.S. at 40 (citing *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)).  Although Plaintiff's loud "sound-off" and his fellow inmate's subsequent laughter may have prompted Defendant Doe No. 4 to take disciplinary action, the complaint suggests that the punishment was excessive. Plaintiff shall therefore be allowed to proceed with **Count 1** against Defendant John Doe No. 4.

**B.     IDOC Officials - Godinez, Taylor & Bates**

The complaint states no viable claim against the three high-ranking IDOC officials, including Defendants Godinez, Taylor, and Bates.  Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under [Section] 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted).  The doctrine of *respondeat superior* does not apply to actions filed under Section 1983.  *See, e.g., Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir. 2008).

The complaint identifies Godinez, Taylor, and Bates as defendants (Doc. 1, pp. 1-2).  But the factual allegations in the complaint do not mention these individuals.  Merely invoking the name of a potential defendant is not sufficient to state a claim against that individual.  *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption.").  The allegations must suggest that each defendant personally participated in the deprivation of a constitutional right by describing the conduct giving rise to a claim against him or her.  There is no suggestion of this sort in the complaint.

And although the doctrine of *respondeat superior* is not applicable to Section 1983 actions, "[s]upervisory liability will be found . . . if the supervisor, with knowledge of the subordinate's conduct, approves of the conduct and the basis for it." *Lanigan v. Village of East Hazel Crest, Ill.*, 110 F.3d 467, 477 (7th Cir. 1997); *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001).  *See also Doyle v. Camelot Care Centers, Inc.,* 305 F.3d 603, 615 (7th Cir. 2002) (allegations that an agency's senior officials were personally responsible for creating the policies, practices and customs that caused the constitutional deprivations suffice to

demonstrate personal involvement).  The complaint generally alleges that there is a "wide spread custom for IDOC officials and the administration to cover there (sic) officer's wrong doing[s] . . . [by] mak[ing] it seem like all inmates are bad and attacking them" (Doc. 1, p. 10).  The complaint sets forth no allegations that explain this general statement; however, and it certainly draws no coherent connection between a particular custom or practice and the three high-ranking IDOC officials.  It also provides no example of a time when this alleged custom or practice impacted Plaintiff, resulting in the deprivation of a constitutional right.  Without more, the individual capacity claims against Defendants Godinez, Taylor, and Bates fail.

Further, the complaint states no official capacity claim against these defendants. Normally, a high-ranking official would remain in the action, in his or her official capacity, in order to carry out any injunctive relief that is ordered.  Even though Plaintiff seeks injunctive relief (in the form of an order expunging a disciplinary ticket and transferring him to another facility), as discussed in more detail below, the complaint states no claim in connection with the disciplinary ticket.

The only surviving claim for excessive force pertains to an incident that occurred at Du Quoin, where Plaintiff is no longer housed.  His request for injunctive relief, in the form of a transfer, is therefore moot.  "[W]hen a prisoner who seeks injunctive relief for a condition specific to a particular prison is transferred out of that prison, the need for relief, and hence the prisoner's claim, become moot." *Lehn v. Holmes*, 364 F.3d 862, 871 (7th Cir. 2004).  *See also Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1995).  It would only be proper for the Court to consider injunctive relief if Plaintiff can show a realistic possibility that he would again be incarcerated at Du Quoin under the conditions described in the complaint.  *See Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011) (citing *Ortiz v. Downey,* 561 F.3d 664, 668 (7th Cir. 2009)).

But the complaint specifically alleges that Plaintiff has received assurances that he will not return to Du Quoin.  Accordingly, Plaintiff's request for injunctive relief is moot, and it is appropriate to dismiss Defendants Godinez, Taylor, and Bates from this action.

**C.      John Doe Nos. 1, 2, 3, 6, 7 & 8**

These defendants are identified generically in the case caption, but they are not mentioned in the factual allegations at all.  The Court must emphasize that "[a] plaintiff cannot state a claim against a defendant by including the defendant's name in the caption."  *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998).  More is required.

The complaint frequently refers to unknown individuals.  Plaintiff has identified ten separate "John Doe" defendants in the case caption, presumably to assist in their identification. But Plaintiff's failure to refer to these "John Doe" defendants in the body of the complaint only confuses the pleading.  The Court cannot draw a connection between the "John Doe" defendants in the case caption and the many vague references to unknown officials in the body of the complaint.  Further, having failed to draw any connection between these unknown parties and specific conduct that violates Plaintiff's rights, the Court finds that no claim has been stated in the complaint against Defendants Doe Nos. 1, 2, 3, 6, 7 & 8.

**D.      John Doe No. 5**

No claim has been stated against this defendant either.  According to the complaint, Defendant Doe No. 5 told Plaintiff to wash his mouth twice, after learning that it was bloody. This defendant also required Plaintiff to "carry a log," as punishment for spitting blood onto the floor and denying that he did so.  Plaintiff admitted in the complaint that he did, in fact, spit on the floor and then denied it when asked.  The complaint offers no allegations suggesting that the

punishment for this conduct was excessive or unwarranted.  Based on these allegations, no claim has been stated against Defendant Doe No. 5 for excessive force, or anything else.

**E.      John Doe No. 9**

The complaint also articulates no actionable claim against Defendant Doe No. 9 for questioning Plaintiff's veracity when he gave a statement to this officer about the assault, or indicating that Plaintiff refused to sign the report when he did, in fact, decline to sign it (Doc. 1, p. 8).  The complaint does not explain what claim allegedly arises from this conduct, even in basic terms.  Under the circumstances, these factual allegations are so sketchy that they fail to provide sufficient notice of Plaintiff's claim to the Court and to Defendant Doe No. 9.  *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).  For this reason, Plaintiff cannot proceed with any claim against this defendant.

**F.      John Doe No. 10**

The complaint also fails to suggest any claim against Defendant Doe No. 10.  This Dixon Spring officer pulled Plaintiff out of the line and questioned him, after Plaintiff allegedly told another inmate to quiet down during physical training.  Defendant Doe No. 10 ultimately issued Plaintiff a disciplinary ticket[12] and required him to carry a "carry a log."  Here again, Plaintiff admitted questioning the officer's decision, by asking Defendant Doe No. 10 why *both* inmates were not required to carry the log together.  The officer allegedly responded by pulling on Plaintiff's hat so hard that he fell to the ground with a log in tow.  He was then punished further by being "shackled."  The complaint does not mention any injury associated with this incident.

And, what is more, Plaintiff has pleaded himself out of any claim.  The only conceivable claim is an Eighth Amendment excessive force claim against Defendant Doe No. 10.  Plaintiff

---

[12] No additional information about this ticket is provided, such as the nature of the rule violation cited in the ticket, the disciplinary hearing, or the outcome.

admits, however, that he was required to carry a log, after talking to another inmate during physical training. The complaint goes on to allege that Plaintiff fell to the ground and was later shackled for questioning the same officer's decision regarding punishment. Given Plaintiff's admission of wrongdoing and the apparent lack of any injury, it appears that the officer was merely undertaking "a good-faith effort to maintain or restore discipline" when he ordered Plaintiff to carry a log and later snatched his hat. *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). Plaintiff shall not be allowed to proceed with a claim against Defendant Doe No. 10.

### G.    Du Quoin IIP Officer - August 29th

The complaint states no viable claim against the unknown IIP officer, who told Plaintiff to quiet down, when he "sounded off" too loudly on August 29, 2014 (Doc. 1, p. 5). The IIP officer called Plaintiff a "dipsh*t" (Doc. 1, p. 5). It is well-settled that name calling does not give rise to an actionable federal constitutional claim. *See Patton v. Przybylski*, 822 F.2d 697, 700 (7th Cir. 1987) (verbal threats and name calling directed at inmate not actionable under Section 1983); *see also McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) (Name-calling, racially derogatory language, and rude behavior do not violate the Eighth Amendment). Accordingly, Plaintiff cannot proceed with a claim against the unknown IIP officer.

### H.    Du Quoin First Shift Officer & Lieutenant - August 30th

No claim has been stated against the unknown first shift officer, who provided Plaintiff with instructions for complaining to a counselor about the assault on August 30, 2014 (Doc. 1, p. 6). Likewise, no claim has been stated against the lieutenant, who took a statement from Plaintiff the same day. By all indications, both individuals provided Plaintiff with prompt instructions that resulted in his immediate removal from Du Quoin, where he was allegedly subjected to the use of excessive force by an officer. The complaint suggests that Plaintiff was

removed for safety, as opposed to punitive, reasons. Plaintiff does not suggest what claim arises from this conduct, and the Court will not guess what claim he intended to bring.

### I.     Pinckneyville Nurse

The complaint alludes to a nurse, who took photographs of Plaintiff's injuries at Pinckneyville on August 30, 2014. No claim has been stated against this nurse, for the denial of adequate medical care or otherwise. In fact, beyond mentioning these photographs, the complaint contains no further allegations against this individual. The complaint simply does not suggest that the nurse is "personally responsible for the deprivation of a constitutional right." *See Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (citations omitted). Accordingly, Plaintiff shall not be allowed to proceed with a claim against the Pinckneyville nurse.

### J.     Pinckneyville Internal Affairs Officer

The complaint also states no claim against the investigating officer who took Plaintiff's statement before transferring him out of Du Quoin. The complaint seems to suggest that Plaintiff should have been given a lie detector test, simply because this officer asked him if he would be willing to take one. The same result was reached (and more quickly), however, when the investigator acted on Plaintiff's statement by immediately transferring him away from his alleged perpetrator. Accordingly, Plaintiff shall not be allowed to proceed with a claim against the Pinckneyville internal affairs officer.

### K.     Dixon Springs Officers

The complaint also fails to articulate a claim against the group of unknown Dixon Springs officers who called Plaintiff a "snitch" and issued him false demerit reports, all while threatening to make sure he went to jail. The allegations are simply too vague to support a claim as pleaded. They do not provide enough information about any single incident to put the Court

or a defendant on notice of a claim.  Accordingly, Plaintiff shall not be allowed to proceed with a claim against these officers.

**L.     Lieutenant Turner**

The complaint also states no claim against Lieutenant Turner for threatening to "make sure" that Plaintiff goes to jail after denying him a job.  This individual is not named as a defendant in this action.   Moreover, the complaint asserts no specific claim against this individual, and the Court cannot find one.

Empty threats, such as Lieutenant Turner's comment, are not actionable.  *See Patton v. Przybylski*, 822 F.2d 697, 700 (7th Cir. 1987).  Plaintiff has no federally protected right to a job in prison.  *See, e.g., Garza v. Miller*, 688 F.2d 480, 485-86 (7th Cir. 1982), *cert. denied* 459 U.S. 1150 (1983).  Further, the allegations do not set forth a chronology of events that is suggestive of any other claim against Lieutenant Turner, such as a retaliation claim.

In the prison context, where an inmate is alleging retaliation, the inmate must identify the reasons for the retaliation, as well as "the act or acts claimed to have constituted retaliation," so as to put those charged with the retaliation on notice of the claim(s).  *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002).  A plaintiff must have engaged in some protected First Amendment activity (for example, filing a grievance or otherwise complaining about conditions of confinement), experienced an adverse action that would likely deter such protected activity in the future, and he must allege that the protected activity was "at least a motivating factor" in the decision to take the retaliatory action.  *Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009).  "A complaint states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be inferred.'"  *Zimmerman v. Tribble,* 226 F.3d 568, 573 (7th Cir. 2000) (citation omitted).  The allegations describe no reason for retaliation, no protected activity,

and no retaliatory conduct on the part of Lieutenant Turner.  Based on the foregoing discussion, no claim has been stated against Lieutenant Turner for retaliation, or anything else.

## Request for Injunctive Relief

In his request for relief, Plaintiff seeks a preliminary and permanent injunction, in the form of an order expunging a disciplinary ticket and transferring him to another facility.  Plaintiff did not file a separate motion seeking any sort of immediate relief, such as a temporary restraining order or preliminary injunction, pursuant to Federal Rule of Civil Procedure 65.  The Court can find no basis for granting a preliminary *or* permanent injunction in the complaint itself.  Accordingly, Plaintiff's request for injunctive relief shall be denied.

In order to obtain preliminary injunctive relief, whether through a temporary restraining order or a preliminary injunction, Plaintiff must demonstrate that: (1) his underlying case has some likelihood of success on the merits; (2) no adequate remedy at law exists, and; (3) Plaintiff will suffer irreparable harm without the injunction.  *Woods v. Buss*, 496 F.3d 620, 622 (7th Cir. 2007).  If those three factors are shown, the district court must then balance the harm to each party and to the public interest from granting or denying the injunction.  *Id.*; *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013); *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999).

Further, the need for an injunction becomes moot "when a prisoner who seeks injunctive relief for a condition specific to a particular prison is transferred out of that prison. . . ."  *Lehn v. Holmes*, 364 F.3d 862, 871 (7th Cir. 2004).  *See also Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1995).  The Court should only consider a request for injunctive relief if Plaintiff can show a realistic possibility that he would again be incarcerated at Du Quoin under similar conditions. *See Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011) (citing *Ortiz v. Downey,* 561 F.3d 664, 668 (7th Cir. 2009)).

None of these requirements are satisfied.  Only one of Plaintiff's claims (Count 1) survives threshold review, and this claim does not support a request for injunctive relief.  In fact, the claim and the request for injunctive relief appear to be entirely unrelated to one another. Count 1 is an excessive force claim against Defendant John Doe No. 4, who is an unknown Du Quoin officer.  This officer allegedly struck Plaintiff in the head on August 29, 2014.  Plaintiff was not issued a disciplinary ticket in connection with the assault; the complaint mentions no disciplinary ticket at Du Quoin.[13]  Further, Plaintiff is no longer housed there.  He transferred out of this facility soon after the alleged assault, and he received assurances that he would not return. In other words, Plaintiff used the grievance procedures available to him at Du Quoin to obtain quick relief, and the complaint mentions no irreparable harm that he now faces.  Based on the allegations in the complaint, Plaintiff's requests for expungement of an unidentified disciplinary ticket and a prison transfer appear to be unrelated to Count 1 and/or moot.  Either way, Plaintiff's request for injunctive relief is denied without prejudice at this time.

### Discovery of John Doe No. 4

Plaintiff shall be allowed to proceed with Count 1 against Defendant John Doe No. 4. This unknown party must be identified with particularity, however, before service of the complaint can be made on him.  Where a prisoner's complaint states specific allegations describing conduct of individual prison staff members sufficient to raise a constitutional claim, but the names of those defendants are not known, the prisoner should have the opportunity to engage in limited discovery in order to ascertain the identity of those defendants. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009).  "Depending on the particular circumstances of the case, the court may assist the plaintiff . . . by allowing the case to

---

[13] The complaint does mention numerous demerit reports and at least one disciplinary ticket that Plaintiff received at Dixon Springs.  No claims related to these reports or ticket(s) survive threshold review. Therefore, any related request for relief must be denied.

proceed to discovery against high-level administrators with the expectation that they will identify the officials personally responsible." *Donald v. Cook County Sheriff's Dept.*, 95 F.3d 548, 556 (7th Cir. 1996).

In this case, Plaintiff must simply obtain the name of the Du Quoin officer who allegedly assaulted Plaintiff and six other inmates on August 29, 2014.  It appears that Plaintiff can obtain this information by directing a question (in the form of an interrogatory) to the Superintendent of the Du Quoin Impact Incarceration Program.  In order to assist in this process, the Superintendent of the Du Quoin Impact Incarceration Program shall be named as a defendant, in his or her official capacity only and for the sole purpose of identifying the unknown party.  The United States Magistrate Judge assigned to this case may wish to undertake expedited discovery aimed at identifying this party.  Once identified, Plaintiff must name this individual in a properly amended complaint that is filed with the Court.  The Superintendent shall then file a motion seeking dismissal from this action.

### Pending Motions

Plaintiff has filed two motions to appoint counsel (Docs. 3, 7), which shall be **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for a decision.

### Disposition

The Clerk is **DIRECTED** to add the **DU QUOIN IMPACT INCARCERATION PROGRAM SUPERINTENDENT (official capacity only)** as a Defendant, for the sole purpose of identifying Defendant John Doe No. 4.

**IT IS HEREBY ORDERED** that **DEFENDANTS GODINEZ, TAYLOR,** and **BATES** are **DISMISSED** with prejudice from this action for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED THAT** all **UNKNOWN PARTIES**, except John Doe No. 4, are **DISMISSED** without prejudice for the same reason.  All claims against these Unknown Parties are dismissed without prejudice.

**AS TO COUNT 1**, the Clerk of Court shall prepare for **DEFENDANT DU QUOIN IMPACT INCARCERATION PROGRAM SUPERINTENDENT (official capacity only)**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff.  If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If the Defendant cannot be found at the address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file, nor disclosed by the Clerk.

Service shall not be made on the Unknown Defendant, who is referred to in this order as John Doe No. 4, until such time as Plaintiff has identified this defendant by name in a properly filed amended complaint.  Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

Plaintiff shall serve upon Defendant (or upon defense counsel once an appearance is entered), a copy of every further pleading or other document submitted for consideration by the

Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of any document was served on Defendant or counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Donald G. Wilkerson** for further pre-trial proceedings, including a decision on the pending motions to appoint counsel (Docs. 3, 7) and expedited discovery aimed at identifying Defendant John Doe No. 4.

Further, this entire matter is hereby **REFERRED** to **United States Magistrate Judge Wilkerson** for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court

and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

       **IT IS SO ORDERED.**

       **DATED:  December 22, 2014**

                                             _____

                                             **NANCY J. ROSENSTENGEL**
                                           **United States District Judge**